**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VIRTUS PHARMACEUTICALS, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>PAMELA BONDI, in her official capacity as<br>Attorney General of the United States, *et al.*,<br><br>            Defendants. | Civil Action No. 22-0448 (CKK) |

**MEMORANDUM OPINION & ORDER**
(December 3, 2025)

In this case, Virtus Pharmaceuticals, LLC ("Virtus"), a pharmaceutical company that

contracts with third-party companies to manufacture and distribute its products, challenges the

forfeiture of some of those products following a Drug Enforcement Administration ("DEA")

enforcement action against a distributor with whom Virtus contracted. This Court previously

ordered the DEA to hold a hearing at which Virtus could raise objections to the forfeiture of its

property. *See* Mem. Op., Dkt. No. 31; Order, Dkt. No. 30. Now pending before the Court is

Virtus's [30] Motion to Enforce the Court's Order, in which Virtus argues that the DEA has

proposed inadequate procedures for the hearing that the Court has ordered. *See* Pl.'s Mot., Dkt.

No. 44. The Defendants oppose Virtus's Motion. Upon consideration of the parties' submissions,[1]

the relevant legal authority, and the entire present record, this Court is of the opinion that the

DEA's proposed procedures are adequate. The Court shall therefore **DENY** Virtus's [30] Motion.

---

[1] The Court's consideration has focused on the following documents, including the exhibits and attachments thereto:
- the Plaintiff's Complaint ("Compl."), Dkt. No. 1;
- the Plaintiff's Motion to Enforce Court Order ("Pl.'s Mot."), Dkt. No. 44;
- the Defendants' Opposition to the Plaintiff's Motion to Enforce ("Defs.' Opp'n"), Dkt. No. 48; and
- the Plaintiff's Reply in Support of its Motion ("Pl.'s Reply"), Dkt. No. 49.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

## I. BACKGROUND

This Court summarized the relevant statutory framework and factual history of this case in detail in its prior opinion.  *See Virtus Pharms., LLC v. Bondi* ("*Virtus II*"), No. 22-cv-0448, Dkt. No. 31, 2025 WL 915612, at *1–7 (D.D.C. Mar. 26, 2025) (CKK).  In brief, this case involves Virtus's interest in certain drugs that are regulated under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act" or "CSA"), 21 U.S.C. § 801 *et seq.*  Virtus owns "abbreviated new drug applications" approved by the Food and Drug Administration ("FDA"), as well as pharmaceuticals produced under the authority of those applications, some of which are controlled substances.  *See* Compl., Dkt. No. 1, ¶¶ 7, 26; Decl. of Anthony Amato ("Amato Decl."), Dkt. No. 8-4, ¶¶ 2–3 (under seal).  However, Virtus is not registered with the DEA, which means that it cannot lawfully possess any of the controlled substances that it owns.  *Id.* ¶ 9.  Instead, Virtus outsources all manufacturing and distribution of its products to DEA-registered third parties.  *Id.* ¶¶ 9, 42.  Because Virtus cannot lawfully possess these products, its property interest in them is inherently limited, and consists primarily of the right to direct how they are handled and sold and the right to profit from their eventual sale through third-party intermediaries.  *See Virtus II*, 2025 WL 915612, at *12.

In August 2021, the DEA suspended the registration of one of the third parties with whom Virtus contracted to handle its products, Woodfield Distribution, LLC ("Woodfield"), because of numerous alleged compliance violations at a warehouse in Texas where Woodfield was storing controlled substances for Virtus and other customers.  *Id.* ¶¶ 43, 47–48 & Ex. A.  Following the suspension of Woodfield's registration, DEA agents seized the controlled substances stored at Woodfield's Texas warehouse, including the products that Woodfield was holding on Virtus's behalf.  *Id.* ¶ 63.

Virtus filed suit in this District to challenge the DEA's decision to seize its products. *See* Compl., *Virtus Pharms., LLC v. Garland*, ("*Virtus I*"), No. 21-cv-2308 (D.D.C. filed Aug. 31, 2021). Virtus sought preliminary relief, which this Court denied. *See Virtus I*, No. 21-cv-2308, 2021 WL 4306165, at *6–16 (D.D.C. Sept. 22, 2021). Virtus then voluntarily dismissed its suit. *See* Notice of Voluntary Dismissal, *Virtus I*, No. 21-cv-2308, Dkt. No. 19.

Later, Woodfield voluntarily surrendered its DEA registration, and the DEA concluded that under a provision of the Controlled Substances Act, this surrender resulted in the automatic forfeiture to the United States of "all" controlled substances that had been "owned or possessed" by Woodfield. *See* 21 U.S.C. § 824(f) (providing that "[u]pon a revocation order becoming final, all . . . controlled substances" that were "owned or possessed" by the entity whose registration was revoked "shall be forfeited to the United States," and requiring the Attorney General to "dispose of such controlled substances"); *see also* Compl. ¶ 100–02; Pl.'s Statement of Undisputed Material Facts ("SUMF"), Dkt. No. 7-1, ¶¶ 17–19. Accordingly, the DEA notified Virtus that it intended to dispose of all the controlled substances that Woodfield had possessed, including Virtus's products. Compl. ¶ 103; SUMF ¶ 19.

Virtus objected to the DEA's proposal to dispose of its products and argued that it was an "innocent owner" whose interest in the controlled substances held by Woodfield could not lawfully be forfeited under the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000) (codified in relevant part at 18 U.S.C. § 983). Compl. ¶¶ 104, 108; SUMF ¶¶ 20–21, 23. The DEA agreed to postpone the disposal of Virtus's products until Virtus had an opportunity to seek judicial relief, which Virtus timely sought from this Court. *See* Compl. ¶ 109.

Virtus then filed the present suit against the DEA, the DEA Administrator, and the Attorney General, claiming that (1) the DEA violated 18 U.S.C. § 983(a) by failing to provide notice of a

potential nonjudicial civil forfeiture proceeding within the time frame required by CAFRA; (2) Virtus is an "innocent owner" entitled to a declaration of that status and the return of its products under 18 U.S.C. § 983(d); and (3) the seizure and forfeiture of Virtus's property violated the Due Process Clause of the Fifth Amendment. *See* Compl. ¶¶ 113–41.

The Defendants moved to dismiss Virtus's claims, and Virtus moved for summary judgment. This Court granted in part and denied in part each of the parties' motions, concluding that Virtus's statutory claims must be dismissed, but holding that the Due Process Clause of the Constitution nonetheless required the Defendants to hold a hearing at which Virtus could contest the forfeiture of its property. *See* Mem. Op., Dkt. No. 31. The Court further concluded that, although Virtus had failed to state a statutory claim under CAFRA, it was entitled to raise CAFRA's innocent-owner defense in its hearing before the DEA and have the DEA decide in the first instance whether it was, in fact, an innocent owner. *Id.* at 33.

Accordingly, the Court directed the DEA to "hold a forfeiture hearing at which the Plaintiff may contest the forfeiture of its property consistent with the holdings of the Court's Memorandum Opinion." Order, Dkt. No. 30. The relevant holdings included a conclusion that "forfeiture under Section 824(f)"—the provision that the DEA concluded resulted in automatic forfeiture of Virtus's products after Woodfield surrendered its registration—"is subject to CAFRA's prohibition on forfeitures against innocent owners." Mem. Op., Dkt. No. 31, at 33. The Court's Order therefore required the DEA to hold a hearing at which Virtus could argue "that forfeiture is impermissible because Virtus is an 'innocent owner' whose interest cannot be forfeited under CAFRA." *Id.* The Court's Memorandum Opinion further provided that "[i]f the DEA concludes that Virtus has carried its burden of showing that it is an innocent owner by a preponderance of the evidence, the DEA must conclude that forfeiture of Virtus's interest in the property at issue is not authorized

by" the statutory provision that the DEA previously concluded would lead to an automatic forfeiture. *Id.* However, the Court did not require the DEA to follow any particular procedure to determine whether Virtus had carried this burden. *See id.*

In response to the Court's Order, the DEA notified Virtus that it would hold a hearing at which Virtus "may raise objections to the forfeiture of [its] property, including that forfeiture is impermissible because Virtus qualifies as an 'innocent owner' under [CAFRA]." Pl.'s Ex. A ("Hr'g Letter"), Dkt. No. 44-1, at 1. The DEA further notified Virtus that after the hearing, the DEA would decide whether forfeiture was "authorized, consistent with [this] Court's conclusion that forfeiture under Section 304(f) of the Controlled Substances Act (21 U.S.C. § 824(f)) is subject to CAFRA's prohibition on forfeitures against innocent owners." *Id.*

The DEA's notice set out the procedures that would be used before, during, and after the hearing. *See* Hr'g Letter at 2–3. The DEA informed Virtus that it would allow pre-hearing briefs from each party; that the hearing itself would be "private and informal," would be conducted before the "special agent in charge" of the DEA's Houston Division Office, and would include 90 minutes of presentation time for each side; and that after the hearing, the hearing officer would prepare written recommended decisions and findings of fact, the parties would have opportunities to submit written exceptions to the hearing officer's recommendations, and the DEA Administrator would review the pre-hearing briefs, the hearing officer's recommendations, and the parties' exceptions to make a final determination on behalf of the DEA, which the DEA would then publish in the Federal Register. *Id.* at 3. The DEA's final determination would be appealable to the U.S. Court of Appeals for the D.C. Circuit or the U.S. Court of Appeals for the Circuit in which Virtus's principal place of business is located. *Id.* The DEA's notice to Virtus stated that the "[a]pplicable

regulations governing the [hearing] include 21 C.F.R. §§ 1316.31–1316.34," which are regulations governing enforcement proceedings.  *See id.* at 1.

Now pending before the Court is Virtus's [44] Motion to Enforce the Court's Order, in which Virtus argues that the Defendants are "refusing to comply with" the Court's instructions because the DEA's proposed hearing procedure does not afford certain safeguards that Virtus argues are required.  *See* Pl.'s Mot. at 2.  Specifically, Virtus objects to the DEA's proposal to hold a hearing before the "special agent in charge" of the DEA's Houston Division Office, who participated in the investigation of Woodfield, rather than before an impartial administrative law judge.  *Id.* at 7–9.  Virtus also objects to aspects the DEA's proposed procedures that afford less process than an Administrative Procedure Act ("APA") adjudicative hearing.  *See id.* at 6, 9.  The Defendants oppose Virtus's Motion, arguing that Virtus forfeited each of its arguments and that those arguments fail on the merits.  *See* Defs.' Opp'n, Dkt. No. 48.

Soon after the briefing on Virtus's Motion concluded, the Defendants notified Virtus and the Court that a new individual—an agent who was not involved in the DEA's investigation and enforcement action against Woodfield—had been named special agent in charge of the DEA's Houston Division Office and will preside at any hearing regarding the forfeiture of Virtus's products.  *See* Notice, Dkt. No. 51.

Virtus's Motion to Enforce is now ripe for decision.

## II. LEGAL STANDARD

A district court "should grant a motion to enforce if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'"  *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (PLF) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (RMU)).  However, "if a plaintiff 'has received all relief required by that

prior judgment, the motion to enforce [should be] denied.'"  *Id.* (alteration in original) (quoting *Heartland Hosp.*, 328 F. Supp. 2d at 11).

### III. ANALYSIS

Virtus's Motion to Enforce seeks an order directing the DEA to provide Virtus with additional procedures that are available in certain proceedings under the Controlled Substances Act and the APA.  In its prior Memorandum Opinion, this Court concluded that the Due Process Clause entitles Virtus to a post-seizure hearing to contest the forfeiture of its property interest in the pharmaceuticals that the DEA seized from Woodfield's Texas warehouse.  *See Virtus II*, No. 22-cv-0448, 2025 WL 915612, at \*8, \*11–15.  The Court also concluded that under CAFRA, Virtus has a statutory right to raise an "innocent-owner" defense in any such hearing.  *Id.* at \*16. However, the Court did not specify the procedures to which Virtus would be entitled at such a hearing.  *See id.*  Upon careful consideration of the parties' arguments, the Court concludes that neither its prior Order nor any of the other authorities on which Virtus relies requires the procedures that Virtus now seeks.  The Court shall therefore **DENY** Virtus's Motion.

### A.  This Court's Order does not entitle Virtus to the additional process it seeks.

In the decision at issue here, the Court awarded Virtus an important but narrow remedy: A post-seizure opportunity to be heard by the DEA regarding the propriety of the forfeiture of Virtus's property following the revocation of Woodfield's DEA registration.  *See Virtus II*, 2025 WL 915612, at \*12.  Virtus's entitlement to this hearing arises directly from the Due Process Clause of the Fifth Amendment, as authoritatively interpreted by the Supreme Court.  *See id.* at \*14 (citing *United States v. Von Neumann*, 474 U.S. 242, 247–50 (1986), and *United States v. $8,850*, 461 U.S. 555, 562–65 (1983)).

Because this Court's Order directing the DEA to hold a hearing is based on Virtus's rights under the Due Process Clause, many of Virtus's statutory and regulatory arguments are unavailing.

Virtus first argues that the DEA's proposed procedures conflict with 21 U.S.C. § 875, which is a provision of the Controlled Substances Act requiring that "notice shall be given and hearings shall be conducted under appropriate procedures of" the Administrative Procedure Act ("APA").  Pl.'s Mot. at 6.  Building on that argument, Virtus argues that the DEA must also comply with each of its own regulations for administrative hearings under the Controlled Substances Act, including a requirement that the presiding officer be an administrative law judge.  *Id.* at 6 (citing 21 C.F.R. §§ 1316.41–.68).  However, none of these statutory or regulatory requirements is encompassed in the Court's Order, which the Court fashioned as a remedy for the specific legal wrong that Virtus identified: a denial of its constitutional right to a timely post-deprivation hearing to contest the forfeiture of its property.  *See Virtus II*, 2025 WL 915612, at *12–15.  Although the Court held that Virtus is entitled to raise a *substantive* statutory defense in its hearing before the DEA— CAFRA's innocent-owner defense—the Court did not hold that Virtus was entitled to any specific *procedural* rights under CAFRA, the Controlled Substances Act, or any other statute or regulation. Accordingly, the Court's Order does not require the DEA to comply with the specific statutory or regulatory provisions that Virtus has identified.

For a similar reason, the Court rejects Virtus's argument that the DEA's proposed hearing procedures are inadequate because the regulations that the DEA identified in its initial notice as "[a]pplicable" to the hearing are designed for hearings involving entities "against whom criminal and/or civil action is contemplated under the Controlled Substances Act."  *See* Hr'g Letter, Dkt. No. 44-1, at 1; 21 C.F.R.. § 1316.31.  Virtus argues that these procedures are improper because the DEA has not alleged that Virtus has violated the Controlled Substances Act, and there is no indication that any criminal or civil enforcement action against Virtus is contemplated.  Pl.'s Mot. at 7–8; Pl.'s Reply at 6–7.  In response, the Defendants clarify that "[t]he DEA merely *modeled*

the [proposed procedures] after the process outlined in" the regulations cited in the original notice to Virtus. Defs.' Opp'n at 12 (emphasis in original). Because the Court's Order did not direct the Defendants to follow any particular statutory or regulatory procedures at the required hearing, the Court declines to order additional procedures based on the asserted inconsistency with the regulations that the DEA cited in its initial notice.

Virtus also briefly argues that the DEA's proposed procedures do not comply with this Court's Order because the DEA's proposal would "fail to afford [Virtus] its due process," but this argument is unpersuasive. *See* Pl.'s Mot. at 7; *see also* Pl.'s Reply at 7. As the Supreme Court has often emphasized, "[d]ue process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Accordingly, "[t]here is no one-size-fits-all procedure to protect against the unconstitutional deprivation of property." *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020).

To determine whether a given set of procedures is constitutionally adequate, courts apply the familiar three-part balancing framework of *Mathews v. Eldridge*, considering:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). Under this balancing test, the procedures that the DEA has planned for Virtus's hearing easily satisfy the minimum requirements of due process.

*First*, as the Court previously noted, Virtus's property interest in the controlled substances at issue is "inherently limited," consisting primarily of the right to be paid for the sale of the products at issue. *Virtus II*, 2025 WL 915612, at *12. The limited extent of Virtus's interest at issue here weighs against requiring additional procedures at the hearing the Court has ordered.

9

*Second*, on the present record, it does not appear that the additional or substitute procedures that Virtues proposes would meaningfully alter the risk that Virtus will be erroneously deprived of its property interest. The DEA's proposed procedure will allow Virtus to make its case in a written brief and through an in-person oral presentation, as well as through written exceptions to the hearing officer's recommended decision. *See* Hr'g Letter, Dkt. No. 44-1. Now that there is a new special agent in charge of the DEA's Houston Division Office, the hearing will be administered by an individual who was not involved in the relevant investigation and enforcement actions. *See* Notice, Dkt. No. 51. Another neutral decisionmaker, the DEA Administrator, will make the final determination on behalf of the agency, and that determination will be appealable to a circuit court of appeals. *See* Hr'g Letter at 3. Virtus has not shown that its proposed alternative procedure—including an initial hearing before an independent administrative law judge under APA procedures—would meaningfully reduce the risk of an erroneous determination about the propriety of the forfeiture at issue, particularly given the multiple opportunities to be heard and multiple impartial decisionmakers already included in the DEA's proposal. This second factor therefore weighs against requiring additional procedures.

*Third*, the Government's interests weigh heavily against requiring additional or substitute procedures. The DEA must make countless decisions about the disposition of property seized during enforcement operations, often while attending to compelling and time-sensitive public safety and law enforcement interests. Although Virtus's property right in its products is important and undoubtedly entitled to protection, the extent of that protection must be balanced against the corresponding costs to the Government and the public at large. This third factor weighs heavily against requiring additional procedures here.

In sum, the Court concludes that the DEA's proposed procedures are constitutionally adequate, and Virtus is not entitled to additional procedures to enforce the narrow constitutional remedy that this Court has ordered.

Virtus argues that it is "absurd" that the constitutional remedy this Court has awarded may afford it less process than Woodfield received at the hearing to determine whether Woodfield's DEA registration should be revoked, but this argument, too, is unsuccessful. *See* Pl.'s Mot. at 9. In the Controlled Substances Act, Congress required specific procedures allowing DEA registrants like Woodfield to be heard before the DEA revokes their registrations. *See* 21 U.S.C. § 824(c). By contrast, Congress has not required specific procedures to allow property owners—even innocent property owners—to protect their interests when a revocation of a *third party's* registration leads automatically to forfeiture. (Although Virtus has argued that CAFRA requires such procedures, this Court has already considered and rejected that argument. *See Virtus II*, 2025 WL 915612, at *9.)  As the Defendants note, this outcome reflects Congress's design of the Controlled Substances Act as a "closed regulatory regime" focused on the activities of a defined and closely supervised group of DEA registrants. *See* Defs.' Opp'n at 7–8 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006)).  In the absence of a statutory entitlement to specific procedures, Virtus is guaranteed only as much process as the Due Process Clause requires, which may be less than what Congress decided was appropriate to provide to registrants.

In sum, this Court's prior Order does not entitle Virtus to the additional procedures that it seeks in its Motion to Enforce.

### B.  Section 875(b) does not independently require the DEA to employ formal APA procedures at the hearing that the Court has ordered.

Having concluded that this Court's prior Order did not entitle Virtus to the additional procedures that it now seeks, the Court turns to Virtus's argument that a provision of the Controlled

11

Substances Act, 21 U.S.C. § 875(b), by its own force requires the DEA to follow APA procedures in its forfeiture hearing.  The Court concludes that the provision on which Virtus relies is not applicable here and declines to order the DEA to comply with its requirements at the hearing that the Court has ordered.[2]

The relevant provision of the Controlled Substances Act, 21 U.S.C. § 875(b), provides that, "[e]xcept as otherwise provided" in the subchapter of the Controlled Substances Act regarding control and enforcement, "notice shall be given and hearings shall be conducted under appropriate procedures of [the APA]."  21 U.S.C. § 875(b).  Virtus argues that this provision applies to the hearing that the Court has ordered because that hearing "is being conducted by the DEA pursuant to its statutory authority."  Pl.'s Reply at 3; *see also* Pl.'s Mot. at 2, 6.  The Defendants disagree, arguing that Section 875(b) applies "only if another [Controlled Substances Act] provision independently grants [the respondent] the right to a hearing."  Defs.' Opp'n at 7.

Although there is force to each party's arguments, this Court is of the opinion that the Defendants' reading of Section 875(b) is the better one:  The Controlled Substances Act requires the DEA to follow APA hearing procedures only if another provision of the Act expressly provides for a hearing.  This conclusion is consistent with the longstanding rule that the APA's formal adjudication procedures apply "only when some statute requires a determination 'on the record after opportunity for an agency hearing.'"  *See Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 361 (D.C. Cir. 1981) (quoting 5 U.S.C. § 554).  In the absence of "the magic words that trigger the APA's formal adjudication provisions," the APA allows agencies to use informal

---

[2] The Defendants argue that the Court should treat this argument as forfeited because Virtus did not raise the argument in either its initial Complaint or the Amended Complaint that it filed after the Court ruled on its Motion for Summary Judgment and the Defendants' Motion to Dismiss.  Defs.' Mot. at 4–5.  Because the substance of Virtus's argument depends on the details of the remedy that the Court ordered in response to Virtus's Motion for Summary Judgment and Virtus raised the argument relatively soon after the Court's Order, the Court will treat Virtus's argument as timely and will resolve it on the merits.  *See* Pl.'s Reply at 5–6.

procedures, under which "'agencies must satisfy only minimal procedural requirements.'" *Ass'n of Priv. Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176, 197–98 (D.D.C. 2015) (JDB) (quoting *Sw. Airlines Co. v. Transportation Sec. Admin.*, 650 F.3d 752, 757 (D.C. Cir. 2011)), *aff'd*, 640 F. App'x 5 (D.C. Cir. 2016).  This interpretation ensures that the full suite of procedural protections are afforded whenever Congress has expressly provided for them, while avoiding the unworkable results that would flow from a rule requiring the DEA to provide a formal hearing for every adjudicative decision that its officers and employees make in the ordinary course of performing their statutory duties.  *See* Defs.' Opp'n at 7 (noting that a contrary reading would implicate "a wide range of DEA actions" and "would strain agency resources").

Accordingly, the Court concludes that Section 875(b) does not require the DEA to follow APA hearing procedures where, as here, the respondent's right to a hearing arises from the Due Process Clause of the Fifth Amendment, rather than from a provision of the Controlled Substances Act.  The Court therefore declines to order the Defendants to follow APA procedures at the hearing that the Court has ordered.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Virtus's [44] Motion to Enforce is **DENIED**.

**SO ORDERED.**

**Dated**: December 3, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

13